Matter of Anselmo v Annucci (2019 NY Slip Op 07126)





Matter of Anselmo v Annucci


2019 NY Slip Op 07126


Decided on October 03, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 03, 2019

527755

[*1]In the Matter of Alex Anselmo, Petitioner,
v
Anthony J. Annucci, as Acting Commissioner of Corrections and Community Supervision, Respondent.

Calendar Date: August 30, 2019

Before: Garry, P.J., Lynch, Mulvey, Devine and Rumsey, JJ.


Alex Anselmo, Malone, petitioner pro se.
Letitia James, Attorney General, Albany (Victor Paladino of counsel), for respondent.



Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent finding petitioner guilty of violating certain prison disciplinary rules.
Petitioner, a prison inmate, was charged in a misbehavior report with refusing a direct order, being out of place, violating facility movement procedures, creating a disturbance and interfering with an employee's duties. The charges stemmed from an incident in which petitioner attempted to go to the library, refused orders to return to his assigned program and became agitated. Petitioner struck an escort in the wake of that incident, resulting in a second misbehavior report charging him with assaulting a staff member and engaging in violent conduct. Following a combined tier III disciplinary hearing on the misbehavior reports, the Hearing Officer found petitioner guilty of refusing a direct order, being out of place, violating a facility movement regulation, engaging in violent conduct and assaulting a staff member. The determination was affirmed on administrative appeal, and this CPLR article 78 proceeding ensued.[FN1]
We confirm. Initially, "the hearing was commenced in a timely manner and was completed in accordance with proper extension requests" (Matter of Gonzalez v Annucci, 168 AD3d 1291, 1292 [2019]; see Matter of Lopez v Annucci, 171 AD3d 1326, 1327 [2019]; Matter of Encarnacion v Annucci, 150 AD3d 1581, 1582 [2017], lv denied 30 NY3d 903 [2017]). "In any event, compliance with the regulatory time limits contained in 7 NYCRR 251-5.1 is directory only and there is no indication of any substantive prejudice to petitioner resulting from the delay" (Matter of Caldwell v Venettozzi, 166 AD3d 1184, 1185 [2018] [internal quotation marks and citations omitted]; see Matter of Moise v Annucci, 168 AD3d 1337, 1338 [2019]).
Next, petitioner contends that he was improperly denied documentary evidence in the form of certain videotapes. The bulk of the requested video footage could not be produced because it did not exist (see Matter of Reyes v Keyser, 150 AD3d 1502, 1505 [2017]; Matter of Benitez v Annucci, 139 AD3d 1215, 1216 [2016]). Petitioner also requested video footage of his movements after the incidents that did exist, although the Hearing Officer was advised in error that it did not exist or was otherwise inaccessible. Respondent subsequently provided the video with his answer to the petition, however, and we are satisfied after a viewing that it contains nothing of relevance to the disciplinary charges. As a result, the failure to produce the video footage for the hearing caused no prejudice to petitioner that would require annulment (compare Matter of Maldonado v Coughlin, 186 AD2d 974, 975 [1992], with Matter of Reyes v Annucci, 150 AD3d 1373, 1374 [2017], lv denied 29 NY3d 918 [2017]).
Petitioner was not improperly denied witnesses whose testimony would have been irrelevant and/or redundant (see Matter of Mitchell v Rodriguez, ___ AD3d ___, ___, 2019 NY Slip Op 06046, *2 [2019]; Matter of Goodwin v Annucci, 167 AD3d 1196, 1197 [2018], lv denied 33 NY3d 904 [2019]). Finally, the record does not substantiate petitioner's allegations that the Hearing Officer was biased against him or engaged in improper conduct, and the determination itself was founded upon the hearing evidence (see Matter of Fann v Annucci, 140 AD3d 1517, 1518 [2016]; Matter of Chappelle v Coombe, 234 AD2d 779, 779-780 [1996]). Petitioner's remaining contentions have been examined and found to be without merit.
Mulvey, Devine and Rumsey, JJ., concur.
Garry, P.J. (concurring in part and dissenting in part).
We concur that the determination should be confirmed as to the charges set forth in the first misbehavior report. We dissent as to the second misbehavior report, which charged petitioner with assaulting a staff member and engaging in violent conduct. The incident underlying the charges in the second report occurred in the main prison block, after petitioner was escorted away from the area where the charges underlying the first report arose. Petitioner requested video recordings from this area, as well as footage from the body cameras of correction officers present during the altercation. He advised the Hearing Officer that the "cameras are gonna show that there was no violence. That there was no aggression on my part. And, that it would show that the officers think is versus what (inaudible) is on the paperwork that you and I have been provided is inaccurate." Petitioner further claimed that the body camera footage would show a "responding [s]ergeant, or white shirt that responded when the alarm was called. And, he covered his camera and I, we (inaudible) when they kneed me. When they hit me. It's right on the camera . . . [s]ome white shirt. I don't know what's his name. But, he had a recording body camera because the, the light on it was blinking. When the alarm was activated." None of the requested video recordings were produced at the hearing.[FN2]
The misbehavior report states that the alleged assault and violent conduct occurred in the part of the prison known as A block. The correction officer who had been escorting petitioner back toward his cell for keeplock reported that, upon arriving there, "[he] took the mechanical restraints off," and petitioner then "swung his left elbow and hit [the officer] in the left side of [his] head." The officer further reported that he then got petitioner into a body hold as they hit the ground, and that petitioner continued struggling violently until another officer arrived and administered pepper spray. The record includes the required documentation for incidents involving the use of force, with dates and time stamps indicating that it was completed immediately after the incident.
Petitioner made two requests for video recordings prior to the hearing. The first, in pertinent part, requested video recordings from the "A block camera/facing industry." This request was denied as "there is no video recording in this area." The second request was more detailed and, in addition to referencing the A block location, specified the "tower camera of pathway between tailorshop and A block entrance," and the "body cameras of all sgts involved," in addition to several further requests. These requests were denied on the stated grounds that there was "no camera in this area," and "no [body camera] video." During the hearing, petitioner asserted that there were, in fact, video cameras in the area, describing for the Hearing Officer both the body camera footage that he had expected to be available and the location of various cameras that he believed would reveal evidence in his favor.
In a prison disciplinary proceeding, the Hearing Officer is tasked with assessing the credibility of the inmate, prison staff and witnesses, and with the resolution of conflicting evidence (see e.g. Matter of Foster v Coughlin, 76 NY2d 964, 966 [1990]; Matter of Rogers v Annucci, 167 AD3d 1137, 1138 [2018]; Matter of Adams v Fischer, 116 AD3d 1269, 1270 [2014]; Matter of Cunningham v Coughlin, 97 AD2d 930, 931 [1983]). It is well established that a Hearing Officer has a duty to inquire and develop the record in certain circumstances, such as when an inmate's requested witness refuses to testify, possibly due to coercion or threats (see Matter of Cortorreal v Annucci, 28 NY3d 54, 60 [2016]; Matter of Delgado v Fischer, 100 AD3d 1171, 1172 [2012]), and when an inmate refuses to attend the proceeding (see generally Matter of Hakeem v Coombe, 233 AD2d 805, 806 [1996]).
Here, we find that the Hearing Officer had sufficiently detailed information regarding the potential existence of highly relevant evidence — that is, the alleged video recordings from the A block and the body camera evidence from the reporting officer, as well as the officer who joined him in subduing petitioner within the A block — such that the mere assertion that no such evidence existed triggered a duty of further inquiry. Simply put, our record contains no explanation of why such video recordings did not exist (compare Matter of Hand v Gardner, 114 AD3d 988, 989 [2014]). If the assault occurred, as it appears, in a main hallway within the facility, it stands to reason that there would likely be video recordings that could conclusively reveal the actions of petitioner as he turned and violently struck the correction officer. It also stands to reason that the "take down" immediately thereafter would have been captured on both the hallway video camera and on the officer's body camera, and, further, that petitioner's continued violent resistance would have been captured by the body camera of the assisting officer as he arrived. There may be reasons that such evidence does not exist — it is wholly possible that the officers at the scene were not in fact equipped with body cameras — but those reasons do not appear in our record. This Court cannot accept, as evidence, wholly conclusory statements without any showing of factual support (see Matter of Espinal v Annucci, ___ AD3d ___, ___, 2019 NY Slip Op 06670, *1, *3 [2019]; Matter of Davison v Annucci, 169 AD3d 1318, 1319 [2019]; see generally Matter of Torres v Annucci, 2014 NY Slip Op 30818[U] [Sup Ct, Albany County 2014]). That is what we have here, and all that we have here.
It bears noting that our state correctional system has used video recording technology for decades as an essential tool in maintaining prison security and in resolving and deterring conflicts between inmates and correction officers (see Noam S. Cohen, Videotape in Prison: 3d Voice in 2-Sided Stories, NY Times, Aug. 17, 1991, available at https://www.nytimes.com/ 1991/08/17/nyregion/videotape-in-prison-3d-voice-in-2-sided-stories.html). Well over a decade ago, in 2006, a publication of the Department of Corrections and Community Supervision "wholeheartedly embraced" the use of video recordings to provide a record of events within state prison facilities, noting that such recordings "have been used both to exonerate and to condemn the actions of employees as well as inmates" (Department of Corrections and Community Supervision, Prison Safety in New York: Working Together for Public Protection, § 9 Internal Monitoring Promotes Prison Safety, http://www.doccs.ny.gov/
PressRel/06commissionerrpt/06prisonsafetyrpt.htm).
Here, the completion of use of force reports gave rise to notice that an incident that would necessarily lead to disciplinary proceedings had occurred. In such circumstances, a correctional facility should be charged with awareness that any potentially relevant video recordings of the area where use of force was necessary will be critically important evidence, and that any such recordings should therefore be preserved. For these reasons, in the circumstances presented here, we are not willing to accept the bald assertion that "no videotape [is] available" without some further review and investigation of the underlying reasons for this absence. We would therefore annul the determination as to the charges of assaulting a staff member and engaging in violent conduct that arose out of the second misbehavior report and remit for further proceedings on those charges.
Lynch, J., concurs.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: The petition raised the issue of substantial evidence and was properly transferred to this Court as a result, but the issue has since been abandoned by petitioner (see Matter of White v Annucci, 168 AD3d 1340, 1341 n 1 [2019]).

Footnote 2: A video recording of some activity that occurred after the alleged assault was later produced. As the majority notes, this footage shows nothing that is relevant to the charges, but certain recorded remarks do indicate that at least one correction officer was wearing a body camera.